IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| CORNELL RICHARDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:24-CV-955 |
| | ) | |
| CITY OF DURHAM, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, Chief District Judge.

Cornell Richards was a police officer for the City of Durham in 2022. After he was not within his district when his shift began despite a specific instruction from a supervisor, his employment was terminated. He has brought claims against the City under 42 U.S.C. §§ 1981 and 1983 and under the Uniform Services Employment and Reemployment Rights Act (USERRA). Because he has not offered evidence sufficient to get his claims to a jury, the City's motion for summary judgment will be granted.

## I. Undisputed Facts

On September 2, 2022, when he was scheduled to work a shift in District 2 in Durham, Mr. Richards was outside the city limits at a firing range minutes before his shift was scheduled to began. A lieutenant familiar with Mr. Richards's schedule was also at the firing range and reminded Mr. Richards he had to be "in your assigned beat" at the beginning of the shift. He reminded Mr. Richards that he could not call in as "in-service" and ready for calls unless he was in his "assigned beat."

Mr. Richards did not leave the firing range immediately and was not in District 2 when his shift began.  Yet he still called in that he was in-service and ready for calls.  The lieutenant reported this conduct, and Mr. Richards was placed on leave pending an investigation.

At that time, Mr. Richards was a reservist with the Coast Guard.  While on leave, but before any decision had been made about whether he had violated city policy, he informed his police command team that he would be recalled to Coast Guard duty in mid-October.

After the investigation, a sergeant found Mr. Richards had violated two Police Department policies:  Rule 1.4, requiring officers to "promptly obey all lawful orders and directions given by supervisors," i.e., insubordination, and Rule 2.7, requiring officers to "report to assigned duty at the time and place specified."  Mr. Richards had a long history of disciplinary violations, and upon further review, a captain recommended termination of Mr. Richards's employment.  Following a hearing, the Chief of Police and two deputy chiefs concurred, and appeals to the Chief of Police and then the City Manager were unsuccessful.

The City then terminated Mr. Richards's employment.

## II.     Section 1981/1983 Claim

To succeed on a § 1981 claim, "a plaintiff must ultimately establish both that the defendant intended to discriminate on the basis of race, and that the discrimination interfered with a contractual interest." *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 434 (4th Cir. 2006).  A plaintiff must also show that the interference with a

2

contractual interest would not have happened "but for" the plaintiff's race. *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020); *accord Katti v. Arden*, 161 F.4th 217, 227 (4th Cir. 2025); *Nadendla v. WakeMed*, 24 F.4th 299, 305 (4th Cir. 2022).

When suit is brought against a state actor like the City of Durham, § 1983 is the "exclusive federal remedy for violation of the rights guaranteed in § 1981." *Dennis v. Cnty. of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995) (cleaned up). "[T]he requirements of section 1983 must therefore be satisfied for a section 1981 claim to prevail." *Alexander v. City of Greensboro*, 762 F. Supp. 2d 764, 781 (M.D.N.C. 2011). Section 1983 requires a plaintiff to show: "(1) that the defendant acted under color of state law and (2) that the plaintiff suffered a deprivation of a constitutional right as a result of that action." *Davis v. Durham Mental Health Developmental Disabilities Substance Abuse Area Auth.*, 320 F. Supp. 2d 378, 403 (M.D.N.C. 2004) (cleaned up).

In a § 1981 case, as in a Title VII case, a plaintiff can show discrimination by direct evidence or by circumstantial evidence. *See, e.g.*, *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). The well-known test established in *McDonnell-Douglas* is in effect a way to prove discrimination by circumstantial evidence. *Ali v. WorldWide Language Res., LLC*, 686 F. Supp. 3d 430, 454 (E.D.N.C., 2023); *see Giles v. Nat'l R.R. Passenger Corp.*, 59 F.4th 696, 703–04 (4th Cir. 2023).

Mr. Richards does not put forth any direct evidence of racial discrimination. He has no evidence, for example, of racial comments, of abusive or disrespectful language

3

about race, or statements attributing decisions about his employment to his race. Instead, he relies on the *McDonnell-Douglas* framework.

While he has offered evidence of (1) membership in a protected class; (2) satisfactory job performance; and (3) adverse employment action, his evidence that he was treated differently from similarly situated employees outside the protected class is insufficient to give rise to an inference of discrimination. *See Giles*, 59 F.4th at 704. Even if that were not so, the City has proffered undisputed evidence of a non-discriminatory reason for his termination, and Mr. Richards has offered no evidence sufficient to rebut that explanation as pretextual. *See id.*

Mr. Richards contends he has shown disparate treatment because other officers were charged for insubordination "in circumstances much more flagrant than" his offense conduct. Doc. 36 at 16. But "the plaintiff must provide evidence that the proposed comparators are not just similar in *some respects*, but similarly-situated *in all respects*." *Spencer v. Va. State Univ.*, 919 F.3d 199, 207 (4th Cir. 2019) (cleaned up). The plaintiff's narrow focus on comparing only his offense conduct for insubordination, without considering his disciplinary history and the other charge for not reporting for duty on time, does not support an inference that the City acted out of a discriminatory motive. *See Lightner v. City of Wilmington*, 545 F.3d 260, 265 (4th Cir. 2008).

Mr. Richards maintains there was insufficient evidence to support his insubordination charge. As a result, he alleges, a jury could infer pretext based upon "an extreme overreaction" to a minor infraction. *See* Doc. 36 at 17–18 (citing *Westmoreland*

4

*v. TWC Admin. LLC*, 924 F.3d 718, 728 (4th Cir. 2019)). This position is without merit on multiple levels.

First "it is not the Court's province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) (cleaned up). Here, the investigative findings of insubordination at all levels were consistent, undermining an inference of pretext. *See* Doc. 33-1 at 2–38. Second, the investigative record documented ample evidence of insubordination, and Mr. Richards does not account for his additional violation of Rule 2.7 for failing to report to duty within his district on time. *See id.* at 7–10, 13–14. Third, unlike in *Westmoreland,* Mr. Richards had an extensive disciplinary record, including one prior discipline for insubordination. *Contrast* Doc. *id.* at 9, *with Westmoreland*, 924 F.3d at 728 (inferring pretext from termination for "one infraction"). Thus, neither the finding of insubordination nor the sanction of termination gives rise to an inference of discrimination.

Mr. Richards contends he has shown discrimination based upon a "relatively permissive approach to misconduct by white officers" coupled with statistics "showing that black officers are disciplined at a rate double their percentage in the police force." Doc. 36 at 18. But both assertions are too general to create a genuine issue of fact as to his termination. "Statistics alone are not sufficient to prove pretext in individual disparate treatment cases, and an employer's overall employment statistics will have little direct bearing on the specific intention of the employer when making a particular adverse employment decision." *Brown v. First Cmty. Bank*, No. 18-CV-404, 2019 WL 5445300,

at *6 (W.D. Va. Oct. 23, 2019) (cleaned up).  Statistics "without expert testimony as to methodology or relevance to plaintiff's claim," as here, do not establish pretext or discrimination.  *Carter v. Ball*, 33 F.3d 450, 457 (4th Cir. 1994).

In addition, the plaintiff's assertion of a "permissive approach" to white officers is not supported by the record.  Doc. 36 at 18.  Mr. Richards asserts that the City "has consistently avoided terminating white officers for what a jury could conclude were major infractions."  *Id.*  This assertion necessarily requires comparison of the sanctions and punishment given to the identified white officers.  *See id.* at 7–8 (describing discipline for officers M.B., A.F.(2), B.J., and B.G.).  But, the plaintiff's case does not compare to those officers, as he had received 27 prior infractions, including insubordination, far exceeding the infraction history of the four proposed comparators combined.  *See* Doc 33-1 at 9; Doc. 33-9 at 4–7.

As evidence of pretext, Mr. Richards points to his own testimony that "he was warned by a captain, . . . Genavus Minor, that a high-ranking official in the department whom he identified as 'she' had commented about Mr. Richards, '[w]hy does he still work here? Use this to get rid of him.'"  Doc. 36 at 5 (quoting Doc. 36-1 at 8).  According to Mr. Richards, this meant "they didn't have anything to stand on but they were fishing for more to cling to," and he "assumed from the context it was Andrews."  *Id.* at 6 (quoting Doc. 36-1 at 8); *see id.* at 15 (asserting that this may establish pretext).

This testimony is insufficient to create a genuine issue of fact as to pretext for several reasons.  First, the statement Mr. Richards attributes to Minor, relaying a statement by a high-ranking official, is "hearsay within hearsay," requiring that "each part

6

of the combined statements conforms with an exception to the rule." Fed. R. Evid. 805; *see also Md. Highways Contractors Ass'n v. Maryland*, 933 F.2d 1246, 1251 ("[H]earsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment."). There is no exception for the hearsay attributed to Minor, at least, as he is not a party opponent making a statement "relating to the employee's area of authority." *United States v. Bros. Const. Co. of Ohio,* 219 F.3d 300, 311 (4th Cir. 2000) (cleaned up); Fed. R. Evid. 801(d)(2)(D).

Second, the plaintiff's own supposition that the hearsay statement meant the City "didn't have anything to stand on," Doc. 36 at 6, is an inference "so tenuous that it rests merely upon speculation and conjecture." *Lovelace v. Sherwin-Williams Co.*, 681 F.2d 230, 241 (4th Cir. 1982) (cleaned up); *see Adkins v. CSX Transp., Inc.*, 70 F.4th 785, 794 (4th Cir. 2023) (holding that an employer may rely upon legitimate suspicions of misconduct, so long as it was "the genuine reason for the employment decision" (cleaned up)).

Third, the hearsay statement itself is not inconsistent with the reason given for termination, and it does not tend to show a discriminatory motive. There is no reason other than the plaintiffs' own misconduct identified in the record. Doc. 36-1 at 8; *see* Doc. 33-1 at 13–14. As such, Mr. Richards has not "shown *both* that the reason was false, *and* that discrimination was the real reason" for his termination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993).

The plaintiff's § 1981 claim thus will be dismissed due to insufficient evidence of discrimination and pretext. Because the plaintiff's § 1981 claim is without merit on this

basis, the Court does not reach the City's arguments based upon the additional requirements for municipal liability under *Monell.*

### III. USERRA Claim

Mr. Richards also has not produced evidence sufficient to create a genuine issue of material fact on his USERRA claim.

To succeed on a USERRA discrimination claim, a servicemember must first establish a prima facie case "that the employer's adverse action was taken on the basis of the plaintiff's service, such that the service was a motivating factor in the action." *Kitlinski v. United States Dep't of Just.*, 994 F.3d 224, 229 (4th Cir. 2021) (cleaned up). Similarly, a retaliation claim under USERRA requires that an employee's "protected activity was a motivating factor in the employer's action." *Id.* at 230.

"If the employee establishes that his military status was a motivating factor in the employer's decision, USERRA then shifts the burden of proof to the employer." *Hill v. Michelin N. Am., Inc.*, 252 F.3d 307, 312 (4th Cir. 2001). The employer may then "avoid liability only if the employer can prove that the action would have been taken in the absence of the employee's military status." *Id.* (cleaned up); *see* 38 U.S.C. § 4311(c).

Here, Mr. Richards has not established a prima facie case under USERRA, because there is no evidence suggesting that the City was motivated by the plaintiff's service in terminating his employment. While temporal proximity can be a circumstance suggesting causation, here Mr. Richards was already under investigation at the time of his announcement on September 21, 2022. *See* Doc. 33-1 at 43; Doc. 36-2 at 104. He points to no mention made by any of the various decisionmakers at the various levels of his

8

upcoming deployment and there is no evidence of "discriminatory animus" in the record. *Kitlinski*, 994 F.3d at 230.  Given all the facts, no reasonable jury would infer from timing alone that plaintiff's service or protected activity was a "motivating factor" in his termination.  *Id.*;  *see, e.g.*, *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 309 (4th Cir. 2006) (affirming summary judgment for employer under USERRA where "actions that led to the plaintiff's probation and termination began *before* her protected activity, belying the conclusion that a reasonable factfinder might find that the employer's activity was motivated by the plaintiff's complaints" (cleaned up)).

Mr. Richards contends that his redeployment announcement motivated the City to accelerate its investigation and termination of the plaintiff.  *See* Doc. 36 at 26–27.  There is, however, no evidence that the City accelerated its investigation, much less because of the plaintiff's redeployment announcement.  While Mr. Richards points to Andrews' testimony about the typical length of an investigation, *id.* at 25–26, Andrews in fact testified that "[s]ome are shorter.  Some much longer.  But typically we'd like to see that within 90 days."  Doc. 36-2 at 96.  The plaintiff identifies no evidence that the present investigation and termination were accelerated, and Miller's testimony suggests the opposite.  *See, e.g.,* Doc. 36-4 at 60, 65.  Further, there is no evidence of any reference to the plaintiff's redeployment as a basis for timing of the investigation or termination.

In addition, even if the City accelerated its investigation following Mr. Richards's redeployment announcement, the City has demonstrated that its "permissible reason for its employment decision, standing alone, would have induced it to make the same decision."  *Hill*, 252 F.3d at 315 (cleaned up).  Mr. Richards suggests the City "would

9

have had the benefit of knowing about" the misconduct of another officer in October 2022, for comparison, if it had delayed the investigation. Doc. 36 at 27. But, it is speculative to conclude that unrelated conduct of another officer would have changed the City's decision about Mr. Richards, particularly in light of the consistent findings in his investigative file. *See, e.g.*, Doc. 33-1 at 2–38.

Mr. Richards suggests that he can assert a claim solely on the basis of loss of salary, which he may have otherwise received, if his termination had been delayed until after he returned from deployment. *See* Doc. 36 at 27. But Mr. Richards did not plead a claim based on loss of pay apart from termination. *See* Doc. 1 at 13 ("Wrongful Termination" header to claim); Doc. 1 at ¶ 62 ("termination" as a basis for claim). And even if he had, for the reasons stated above, plaintiff has not shown that the City accelerated the investigation and termination due to his redeployment.

Mr. Richards cites to *Vega-Colon v. Wyeth Pharmaceuticals*, 625 F.3d 22 (1st Cir. 2010), as a "persuasive" comparison in support of his claim. Doc. 36 at 26. That case, however, is distinguishable in several key respects. There, the court found sufficient evidence to support a claim that the defendant's "extension" of a performance improvement plan (PIP) beyond a period of deployment violated USERRA. *Vega-Colon*, 625 F.3d at 29–30. Critically, the court found direct evidence that the extension was tied to the deployment: 1) the PIP expressly referenced the military "leave"; and 2) a supervisor informed the plaintiff "that he did not pass the PIP because his performance was affected by his military service." *Vega-Colon*, 625 F.3d at 29–30. The present case, by contrast, is devoid of such references to the plaintiff's redeployment announcement,

10

either in the course of the investigation or in the termination decision. *See, e.g.,* Doc. 33-1 at 2–38. Unlike in *Vega-Colon*, Mr. Richards has not established a genuine issue of fact on his USERRA claim.

It is **ORDERED** that the defendant's motion for summary judgment, Doc. 32, is **GRANTED**. Judgment will be entered separately.

This the 24th day of April, 2026.

_____
UNITED STATES DISTRICT JUDGE

11